**UNITED STATES of America,
Appellee,**

v.

**Anthony PALUMBO, Appellant.**

**No. 518, Docket 32217.**

United States Court of Appeals
Second Circuit.

Argued June 5, 1968.

Decided Sept. 25, 1968.

Edward M. Shaw, New York City, for appellant.

William J. Gilbreth, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, Roger J. Hawke, Pierre N. Leval, Asst. U. S. Attys., on the brief), for appellee.

Before WATERMAN and FEINBERG, Circuit Judges, and ZAMPANO, District Judge.*

FEINBERG, Circuit Judge:

Anthony Palumbo appeals from a judgment of conviction on three counts of a five-count indictment for selling and possessing on August 30, 1967, and conspiring to sell and possess counterfeit currency, 18 U.S.C. §§ 472, 473, 371, entered in the United States District Court for the Southern District of New York after trial before Irving Ben Cooper, J., and a jury. Palumbo received sentences of eight years on two of the three counts and five years on the other, all to run concurrently. For the reasons given below, we affirm.

The central government witness was James D'Amelio, a Secret Service undercover agent. D'Amelio testified that at 4:30 P.M. on August 29, 1967, he was introduced (apparently by a government informant) to Harry Rose, appellant's alleged co-conspirator,[1] at the Port Authority Terminal in Manhattan. Rose sold fifty counterfeit $20 bills to D'Amelio. Rose also told D'Amelio that he had a partner with him who would be disappointed at the fact that he had come all the way into New York City to sell such a small amount.

The next day, D'Amelio telephoned Rose and arranged to buy a larger quantity of counterfeit currency at the Terminal that day. D'Amelio testified that at about 2 P.M. he saw Rose outside the Terminal walking with appellant. Rose called to D'Amelio; they met and appel-

---

* Of the District of Connecticut, sitting by designation.

1. Rose was named as a co-defendant in the indictment. On the day of trial, Rose pleaded guilty to the conspiracy count and was sentenced to five years after the trial was completed.

lant walked on. D'Amelio objected that the price was too high; Rose said that "his partner, who had just left, was angry because the price was too low." Inside the Terminal, Rose removed a brown paper bag containing 438 counterfeit $20 bills from a locker and gave it to D'Amelio. Rose was thereafter arrested; appellant, sitting in the Terminal waiting room, was also arrested.

Other government agents testified that on August 29, they saw appellant at the Terminal, that on August 30, at 1:40 P.M., they saw appellant hand Rose a brown paper bag which Rose put in a Terminal locker, and that no one other than Rose opened the locker thereafter.

Appellant offered the testimony of three alibi witnesses and Rose. The testimony of the former placed Palumbo at his Newark residence on August 29 during the hours that Rose and D'Amelio allegedly met at the Terminal. Rose testified that he received the bag of counterfeit money on August 29 from a "colored fellow," that on August 30 he met Palumbo outside the Terminal by chance, and that he had placed the paper bag with the counterfeit bills in the locker himself. He denied that Palumbo had any connection with the scheme. The jury resolved these conflicting versions of the events, and found appellant not guilty on two counts relating to August 29, but guilty on the two counts relating to August 30, as well as on the conspiracy count.

Appellant raises several issues on appeal, only one of which requires extended discussion. Prior to opening Palumbo's case, his counsel advised the court that Palumbo had been convicted of armed robbery in 1929, breaking and entering in 1937, receiving stolen property in 1945, breaking and entering in 1946, and armed robbery in 1956. Arguing that these convictions were unrelated to defendant's credibility, remote in time and bound to influence the passions of the jury, counsel asked the court to rule in

advance that the Government could not use the convictions to impeach Palumbo's credibility should he be called in his own defense. The judge ruled that the convictions would be admissible; Palumbo declined to testify. As his main point on appeal, Palumbo contends that the trial court should have held that the convictions could not be used for impeachment purposes. Appellant asserts that the trial court must exercise its discretion in determining whether to allow use of prior convictions to impeach a defendant, that Judge Cooper did not do so here, and that, in any event, the ruling was "outside the scope of [the court's] discretion."

Whether the court had discretion to exercise is an interesting question. The District of Columbia Circuit, in interpreting the D.C.Code, has unequivocally held that the trial judge has such discretion to exclude evidence of prior convictions offered to impeach a defendant's credibility. See, e. g., Brown v. United States, 125 U.S.App.D.C. 220, 370 F.2d 242 (1966); Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965). Some have suggested a rule that goes even further, i. e., that use of prior convictions of an accused to impeach his credibility shall not be allowed at all, unless "he has first introduced evidence admissible solely for the purpose of supporting his credibility." See Uniform Rules of Evidence, Rule 21; Model Code of Evidence rule 106 (1942); McCormick, Evidence § 43 (1954). This proposal raises problems of its own, e. g., what is "evidence admissible solely for the purpose of supporting * * * credibility," which opens the door to impeaching convictions? Nevertheless, there is much to support an exclusionary rule; it diminishes in most cases the danger that a jury will convict only because it regards the defendant as a "bad man," the sort who commits crimes, including the one at issue.[2] Moreover, it encourages a usually knowledgeable wit-

2. Cf. Note, Other Crimes Evidence at Trial; Of Balancing and Other Matters, 70 Yale L.J. 763, 774–78 (1961).

ness, the defendant, to take the stand.[3] On the other hand, most people in making a private decision on a person's credibility would want to know that he had been convicted of perjury or theft. A rule of complete, or almost complete, exclusion may allow an accused to appear as one entitled to full belief when that is not the fact. It is probably for this reason that, so far as we know, such a rule has not been adopted by any circuit, including the jurisdiction whose cases appellant cites as most helpful to him. Indeed, appellant himself does not press for it. See Michelson v. United States, 335 U.S. 469, 487, 69 S.Ct. 213, 224, 93 L.Ed. 168 (1948) (Frankfurter, J., concurring) ("I believe it to be unprofitable, on balance, for appellate courts to formulate rigid rules for the exclusion of evidence in courts of law that outside them would not be regarded as clearly irrelevant in the determination of issues.").

The Government argues that this and other circuit courts, at the opposite extreme, hold that the trial judge has no discretion to exclude evidence of prior convictions for felonies or crimes involving moral turpitude offered to impeach an accused. Undoubtedly, the rule has been that such convictions may ordinarily be so used, see, e. g., Smith v. United States, 358 F.2d 683 (3d Cir. 1966); United States v. Provoo, 215 F.2d 531, 536 (2d Cir. 1954). However, we find little discussion in our cases of the proposition that the judge must always allow such impeachment. Perhaps that assumption has long been implicit in the conventional view, but a leading text, citing, inter alia, Goddard v. United States, 131 F.2d 220 (5th Cir. 1942), has pointed out that:

> Most courts hold * * * that a conviction too remote in time may be excluded by the judge if in his discretion he finds that under the circumstances it lacks probative value.

McCormick, Evidence § 43, at 91. See also Mason v. Mathiasen Tanker Industries, Inc., 298 F.2d 28, 31 (4th Cir.) (stating discretionary rule), cert. denied, 371 U.S. 828, 83 S.Ct. 23, 9 L.Ed.2d 66 (1962). Certainly, recent decisions of this court indicate a concern whether in cross-examination of a defendant "every accusation of criminal or vicious conduct will further the search for truth." See United States v. Provoo, 215 F.2d 531, 536–537 (2d Cir. 1954); cf. United States v. Freeman, 302 F.2d 347, 350 (2d Cir. 1962), cert. denied, 375 U.S. 958, 84 S.Ct. 448, 11 L.Ed.2d 316 (1963); United States v. Tomaiolo, 249 F.2d 683, 687–690 (2d Cir. 1957); United States v. Schiller, 187 F.2d 572, 576 (2d Cir. 1951) (Frank, J., concurring). We have long held that with any potentially prejudicial evidence the trial judge must balance all relevant factors to determine whether its probative value is outweighed by its prejudicial effect. Specifically, we have so ruled on the admissibility of evidence of "other crimes" offered "for any relevant purpose other than merely to show defendant's bad character." See United States v. Johnson, 382 F.2d 280 (2d Cir. 1967); United States v. Deaton, 381 F.2d 114, 117–118 (2d Cir. 1967). In any event, we do not accept the broad proposition that a trial judge has no discretion to bar use of prior convictions to impeach a defendant. In short, we hold that a trial judge may prevent such use, if he finds that a prior conviction negates credibility only slightly but creates a substantial chance of unfair prejudice, taking into account such factors as the nature of the conviction, its bearing on veracity, its age, and its propensity to influence the minds of the jurors improperly.

We turn now to what actually occurred in this case. Defense counsel first brought the question to Judge Cooper's attention after the Government rested, and submitted a memorandum of law.

---

3. See Uniform Rules of Evidence, Rule 21. But note that it is coupled with Rule 23(4), which allows the prosecutor to comment upon a defendant's failure to take the stand, now constitutionally prohibited. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

The judge's first "reaction" was that in view of the proposed testimony of the defendant, which would directly contradict the testimony of the government agents, he would not "preclude the Government" from bringing by "approved methods * * * to the jury the question of the veracity of the defendant." The next morning, after reading counsel's memorandum, the judge stated that he would "adhere to my original reaction." We do not read this record as indicating that the judge felt powerless to exclude the evidence of convictions, if he thought that course should be taken.

■ As to whether this ruling was proper, even the decision in Luck v. United States, supra, heavily relied on by appellant, emphasized the extent of the trial judge's discretion to exclude or admit the evidence. In that case, the trial judge had allowed the defendant to be asked in cross-examination whether he had pleaded guilty to grand larceny; the appellate court held that this was not reversible error. More recently, *Luck* has been construed to allow impeachment of a defendant by convictions involving fraud or stealing, which "are universally regarded as conduct which reflects adversely on a man's honesty and integrity." Gordon v. United States, 383 F.2d 936, 940 (D.C.Cir. 1967). At least three, if not more, of Palumbo's convictions mentioned to Judge Cooper fell within this class. It is true that some of them were fairly ancient, but even the more recent ones included receiving stolen property and robbery. We would have a different question had the focus of inquiry been Palumbo's alleged conviction for rape in 1929, but that was not mentioned to the judge, and he did not consider it. Palumbo argues that his testimony was extremely important to corroborate the alibi witnesses about August 29 and to explain his presence in the

Terminal when he was arrested.[4] However, in light of the direct conflict of testimony between the agents and Palumbo which would have resulted, see Brooke v. United States, 385 F.2d 279, 285–286 (D.C.Cir. 1967), and the nature of the convictions, we would not "disturb such highly discretionary adjudications unless the wisdom of doing so is very clear." Id. at 286. In this case, we cannot say that it is. In sum, we think that Judge Cooper did exercise his discretion and did not abuse it.

■ Appellant has additional peripheral arguments on the threatened use of convictions to impeach. Thus, he claims that the court's ruling denied him constitutional rights under the fifth and sixth amendments. We do not agree that use of a discretionary standard in this case worked unconstitutional harm. Appellant also objects that the trial court refused to adopt ahead of time the proposed charge he requested concerning his prior convictions. (Naturally, since Palumbo never took the stand, no charge concerning prior convictions was given.) The proffered charge emphasized the limited evidentiary use of the convictions, their age, and their nature. Certainly, the first two points could have been properly called to the jury's attention; indeed, all recognized that, as to the first, it was mandatory to do so. As to the last, however, appellant requested a charge that since none of the convictions was "for a crime of lying, fraud or deception" their significance as to credibility was diminished. We do not think that a judge is required to so charge, although he may. Certainly, it would be proper to call to the jury's attention, if requested by defendant, the nature of the crime for which defendant was convicted and the question of its probative force on credibility. We agree that ordinarily a conviction for perjury might de-

4. Palumbo claimed that he had gone to the Terminal to meet a woman. Despite efforts by a private investigator hired at public expense, as well as Palumbo's own efforts when the trial was adjourned earlier than usual so that he could search for her, he was apparently never able to locate this witness. This reason for Palumbo's presence at the Terminal was brought to the attention of the jury, however, in the cross-examination of Harry Rose.

tract a bit more from a defendant's credibility than one for robbery, as in this case, but the variations in circumstance are limitless. Once a conviction has been admitted into evidence for impeachment purposes—and on that, the judge has the limited discretion set forth above—it would be fruitless to try to lay down a rigid scale on the significance to attach to it. In any event, by refusing to agree that he would charge *in haec verba* and by indicating here that he would give the "usual approved charge," the judge did not commit error. Cf. United States v. Haskell, 327 F.2d 281, 286 (2d Cir.), cert. denied, 377 U.S. 945, 84 S.Ct. 1351, 12 L.Ed.2d 307 (1964); United States v. Verra, 301 F.2d 381 (2d Cir. 1962).

Appellant's other points on appeal may be disposed of summarily. The same charge we held to be error in United States v. Hughes, 389 F.2d 535 (2d Cir. 1968), was used in this case.[5] Because defendant did not object, we are faced with the question left open in *Hughes*, i. e., whether the charge was "plain error" under Fed.R.Crim.P. 52(b). However, since the argument of this appeal, we have specifically held that "the isolated use of this unfortunate phraseology," as in this case, is not plain error. United States v. Baratta, 397 F.2d 215 (2d Cir. 1968).

 Finally, appellant claims the trial court erred in refusing to grant him additional peremptory challenges under the following circumstances. Defense counsel used three of his peremptory challenges on prospective jurors who had recently served on a jury in a successful prosecution by the same Assistant United States Attorney trying this case. Claiming that these prospective jurors should have been excused by the court and that he should not have had to use up challenges on them, counsel asked for some additional challenges. Appellant has cited no authority in support of his position that the trial court should have granted additional challenges; in fact, he admits that this point alone would very likely not warrant reversal. The trial judge examined these prospective jurors to make sure that they were in no way prejudiced. Upon concluding that they were not, he was not required to excuse them. On this record, we see no cause for reversal. Cf. United States v. Ragland, 375 F.2d 471, 476 n. 2 (2d Cir. 1967), cert. denied, 390 U.S. 925, 88 S.Ct. 860, 19 L.Ed.2d 987 (1968); United States v. Bowe, 360 F.2d 1, 9 (2d Cir.), cert. denied, 385 U.S. 961, 87 S.Ct. 401, 17 L.Ed.2d 306 (1966); Collier v. United States, 385 U.S. 1042, 87 S.Ct. 779, 17 L.Ed.2d 686 (1967); Cwach v. United States, 212 F.2d 520, 529 (8th Cir. 1954).

Judgment affirmed.

5. *Hughes* was decided after the charge was given.