UNITED STATES of America,
Plaintiff-Appellee,

v.

Leo ZUBKOFF, Defendant-Appellant.

No. 11, Docket 33602.

United States Court of Appeals
Second Circuit.

Argued Sept. 8, 1969.

Decided Sept. 30, 1969.

Certiorari Denied Jan. 19, 1970.

See 90 S.Ct. 684.

Paul Ivan Birzon, Buffalo, N. Y., for defendant-appellant.

Richard J. Arcara, Asst. U. S. Atty. (H. Kenneth Schroeder, Jr., U. S. Atty., for the Western District of New York, on the brief), for plaintiff-appellee.

Before LUMBARD, Chief Judge, and SMITH and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

In United States v. Palumbo, 401 F.2d 270 (2d Cir.1968), cert. denied, 394 U.S. 947, 89 S.Ct. 1281, 22 L.Ed.2d 480 (1969), this court held that a trial judge has discretion under certain circumstances to prevent the use of prior convictions to impeach a defendant. In this appeal we are told that a conviction should be set aside because the trial judge did not exercise that discretion. For reasons indicated below, we do not agree that reversal is called for.

Appellant Leo Zubkoff was convicted in November 1968, after a three-day jury trial before Harold P. Burke, J., in the United States District Court for the Western District of New York on a three-count indictment charging knowing possession of stolen goods from an interstate shipment, 18 U.S.C. § 659, and conspiracy to violate that section, 18 U.S.C. § 371.[1] Appellant wisely makes no attack on the sufficiency of the proof since the evidence of his guilt was very strong. The jury could properly have found the following: At the end of June 1964, 52 automobile radios which had been shipped in interstate commerce were stolen from the loading dock of the

---

1. One of the two § 659 counts charged possession of goods of a value exceeding $100; the other charged possession of goods of a value not exceeding $100. A co-defendant, Charles Barone, pleaded guilty to the former count.

Continental Transportation Lines, Inc. at its terminal in Buffalo, New York. The wholesale cost of each radio was $33, and the retail price was about $55. Appellant Zubkoff ran a junk yard which was a mere 70 yards from the place where the theft occurred. In early July 1964, Donald J. Daniels, a used car dealer, purchased an automobile radio from Zubkoff for $12.50 cash. This radio was subsequently confiscated by agents of the Federal Bureau of Investigation as being part of the stolen shipment. Although Daniels purchased only one radio, Zubkoff had offered to sell him more. On July 13, 1964, two F.B.I. agents observed a 1959 green Chevrolet arrive at appellant Zubkoff's loading platform. This vehicle was owned and operated by co-defendant Charles Barone. Barone and two other men loaded the vehicle with 17 cartons. Zubkoff was present during the loading, and instructed two of his employees to assist. Zubkoff himself carried a larger, open carton and gave it to Barone. Zubkoff also gave Barone a blanket which Barone used to cover up the cartons in his automobile. The agents watched Barone drive off from Zubkoff's junk yard and apprehended him within a quarter of a mile. In the Chevrolet were 20 new automobile radios whose serial numbers matched those of the stolen radios; there was one radio in each of 17 cartons and three radios in the larger, open carton which had been handled personally by Zubkoff.

It is true that appellant testified in his own defense that he had rented space to a man named "Williams" and another man, that the cartons belonged to them, that he did not know Barone and that all he did was to allow Barone to pick up the radios after receiving telephoned instructions, presumably from "Williams," to let Barone have them. The jury, of course, was not required to accept this story and, in view of Zubkoff's own testimony, was more than justified in rejecting it; e. g., defendant admitted, on cross-examination, that although he had never seen the men

before and did not know their full names, address or telephone number, he rented them space in his warehouse and gave them keys to the premises, the latter a privilege not then accorded to his own employees; moreover, the regular books and records evidencing the alleged rental transaction had been lost in a fire and Zubkoff could not recall whether he helped Barone with the loading. On the entire record, the jury had ample grounds for finding appellant guilty of all three counts in the indictment.

Appellant argues that we must nevertheless reverse because the judge allowed the Government to use two prior convictions to impeach his credibility. The issue arose after defendant had testified in his own defense. Before the Government began to cross-examine defendant, his counsel asked the court to bar mention of three convictions of defendant in the New York State courts, one in 1929 for unlawful entry, another in 1940 for petit larceny, and a third in 1966 for procuring for prostitution. The judge excluded the last conviction because it was "on appeal, so that is not a final judgment." As to the other two, the entire colloquy was as follows:

Mr. Birzon: As to the other two, Your Honor, the last conviction that this man had was more than twenty-eight years ago.

The Court: That doesn't make any difference as far as I know the law to be. When a man takes the stand, he puts his credibility on the line and convictions of crime may be considered by the jury as affecting his credibility.

Mr. Birzon: I submit, Your Honor, merely for the record, then, and I don't know any deadline prescribed by law, whether it is five years, ten years, fifteen years. My position relates to the reasonable relationship between the conviction of a crime some twenty-eight years ago and a man's word on the witness stand.

The Court: I think that is your construction of the law. You have

furnished me no authority for this. I never heard of it myself.

I never heard of it and I am not going to listen to that at all. I think when he takes the stand, he puts his credibility on the line and convictions of crime may be considered by the jury as affecting his credibility.

Mr. Birzon: I want to make clear to Your Honor that my position is based on constitutional grounds and that allowing the prosecuting attorney to use this in cross-examination will deprive me of equal protection of the law and due process of the law.

Thereafter, the Government cross-examined defendant effectively, clearly pointing up his inconsistencies and failures of recollection and the inherent incredibility of his story. At the very end of the cross-examination, the two convictions were brought up:

Q. Mr. Zubkoff, in May of 1929, were you arrested for illegal entry, convicted of illegal entry? A. When?

Q. 1929. A. 1929—oh, boy, that is a good one.

Q. If you recall. A. I don't recall, no.

Q. How about 1940? In December? A. I have been arrested a few times.

Mr. Birzon: Objection, Your Honor.

Please listen to the question, Mr. Zubkoff. He is asking you whether you were convicted of a crime.

The Witness: Was I convicted?

Q. How about December of 1940?

The Court: Ask the question and not just "how about."

The Witness: Was I ever convicted of a crime?

Q. In June of 1940 were you convicted of petty larceny? A. I think I was. I don't recall exactly, but I think I was.

Relying on United States v. Palumbo, *supra,* appellant argues that the trial judge committed reversible error be-

cause he refused to exercise his discretion to bar reference to the two convictions. That the judge thought himself powerless to do so seems reasonably clear from the interchange quoted above. Under *Palumbo,* the judge did have such power; indeed, we would not have been surprised had he exercised it. Entirely apart from the fact that the two convictions were for misdemeanors only, although arguably involving moral turpitude, see United States v. Provoo, 215 F.2d 531, 536 (2d Cir.1954); United States v. Murray, 297 F.2d 812, 817 n. 1a (2d Cir.), cert. denied, 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962), they were venerable indeed, particularly the 39-year old conviction for unlawful entry. It is significant that the Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, Rule 6–09(b), recommends that evidence of a conviction for impeachment purposes be

inadmissible if a period of more than 10 years has elapsed since the date of the release of the witness from confinement, or the expiration of the period of his parole, probation, or sentence, whichever is the later date.

Of course that proposal is only a preliminary one on which comments of bench and bar have been solicited. However, the recommendation does indicate the views of a distinguished Advisory Committee which included eight members of the bar with extensive trial experience, four federal judges, and recognized scholars in the field of evidence. At the very least, the proposal indicates that even under present law the decision whether ancient or even middle-aged convictions should be used to impeach calls for most careful consideration by the trial judge.

Despite the fact that this was not done here, we do not think that automatic reversal is called for. While the holding in *Palumbo* was not a break with prior law, we noted that there had been "little discussion in our cases of the proposition that the judge must always allow such impeachment." 401 F.

2d at 273. The opinion in *Palumbo* came down only some seven weeks before the trial here, and at oral argument defendant's counsel told us that he was aware of it at the time. Nevertheless, in the course of his objection he never mentioned *Palumbo* despite the court's remark that "You have furnished me no authority for this"; indeed, counsel rested his objection finally on inapposite constitutional grounds. Moreover, the evidence of defendant's guilt was very strong and his story in explanation was most implausible. In addition, appellant's argument rests on the two assumptions that the judge would have barred reference to the two convictions *if he thought he could* and that if he had not done so we would characterize his ruling as an abuse of discretion. There may well be differences of opinion as to whether those assumptions are correct, but most significantly, even if they are accepted *arguendo*, the two convictions were only mentioned briefly at the close of cross-examination and—according to the information given us at oral argument—were not used in summation at all. The jury was out only a few hours—and properly so. Under all of these circumstances, we are convinced that this error of less than constitutional dimensions [2] "did not influence the jury, or had but very slight effect." See Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); United States v. Bozza, 365 F.2d 206, 218 (2d Cir.1966).[3] Accordingly, we do not think that on this

record reversal of the conviction and a new trial are called for.[4]

No other argument of appellant requires discussion, and the judgment is affirmed.

---

2. But see Weaver v. United States, 408 F. 2d 1269, 1273–1274 (D.C.Cir.), cert. denied, 395 U.S. 927, 89 S.Ct. 1785, 23 L. Ed.2d 245 (1969).

3. For the applicable standard in cases of constitutional error, see Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), and Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

4. Compare the appendix in *Weaver, supra* note 2, 408 F.2d at 1274–1276, which

shows that: Of 24 cases raising this issue in the Court of Appeals for the District of Columbia, there were four reversals; only two of these were on the ground that the trial judge failed to exercise his discretion at all; in only one had the defendant actually taken the stand and that was on a "particularly inflammatory" charge. Barber v. United States, 129 U.S.App.D.C. 193, 392 F. 2d 517 (1968) (sexual abuse of little girl).