UNITED STATES of America,
Appellee,

v.

Anthony DiLORENZO, Appellant.

No. 834, Docket 34420.

United States Court of Appeals,
Second Circuit.

Argued June 2, 1970.

Decided July 14, 1970.

Raymond W. Bergan, Washington, D. C. (Williams & Connolly, Washington, D. C., Edward Bennett Williams, Washington, D. C., of counsel; Lipsitz, Green, Fahringer, Roll, Schuller & Jones, Buffalo, N. Y., Herald Price Fahringer, Buffalo, N. Y., of counsel), for appellant.

Jack Kaplan, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for the Southern District of New York, William B. Gray, Asst. U. S. Atty., of counsel), for appellee.

Before LUMBARD, Chief Judge, SMITH and KAUFMAN, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Anthony DiLorenzo was convicted on trial to the jury in the United States District Court for the Southern District of New York, Walter R. Mansfield, Judge, on charges of interstate transportation of twenty-six 100-share certificates of common stock of International Business Machines stolen in the summer of 1966 from the New York brokerage offices of Hayden, Stone & Co., and conspiracy, in violation of 18 U.S.C. §§ 2314 and 371, and appeals. We find no error and affirm the judgment.

An insurance company, Bankers and Telephone Employees Insurance Co., controlled by one Von Zamft, was suspended in 1966 by the Pennsylvania Insurance Department and was in need of additional capital in excess of one million dollars by January 25, 1967 to resume operations. DiLorenzo agreed to furnish Von Zamft, for a total of $140,000, one million dollars worth of stolen IBM stock. He enlisted one Izzi to carry the stock to Gettysburg, Pennsylvania and after exhibit to the Insurance Department, it was lodged at a bank in Harrisburg. It was later discovered to be part of the stock stolen from Hayden, Stone. Izzi, Von Zamft and DiLorenzo were indicted, Izzi for the interstate transportation of stolen securities, Von Zamft and DiLorenzo for the transportation and conspiracy. They were tried separately before Judge Mansfield and juries in the Southern District of New York, convicted and sentenced, Izzi to imprisonment for eight years, Von Zamft to three years (Von Zamft was not sentenced until January 12, 1970, subsequent to his testimony as a government witness in DiLorenzo's trial) and DiLorenzo to concurrent terms of ten and five years. Izzi's conviction was affirmed on appeal, 427 F.2d 293 (2d Cir. 1970), cert denied, 399 U.S. 928, 90 S.Ct. 2244, 26 L.Ed.2d 794 (June 29, 1970). Von Zamft's appeal is pending; Von Zamft was the principal witness for the government in the case against DiLorenzo.

Appellant concedes that the evidence, if credited, was sufficient to support the verdict and bases his appeal on five claims of error. DiLorenzo's principal contentions concern the admission into evidence of admissions made by him on two occasions, both prior to indictment. Other asserted errors are (1) the trial

court's ruling that two of appellant's prior convictions could be utilized by the government in cross-examination if he were to testify; (2) the admissibility of testimony as to a prior consistent statement by Von Zamft; (3) the propriety of Judge Mansfield presiding in this case after doing so in the companion cases; and (4) resentencing of the appellant.

Appellant asserts that the receipt in evidence of admissions he made on two occasions prior to indictment violated his fourth, fifth and sixth amendment rights; we do not agree. On May 7, 1967, FBI Agent Knox, searching for Izzi, who was a fugitive at the time, interviewed appellant at appellant's residence and was told that appellant and Izzi were close friends and that the appellant occasionally received telephone messages from Izzi at appellant's girl friend's (Miss McCarran) apartment. Agent Knox testified concerning this acknowledgement, which may be considered an admission since it was shown that Izzi called Miss McCarran's apartment when Izzi was in Gettysburg delivering the stolen securities. The second occasion on which appellant made certain admissions was June 5, 1969 when appellant and Von Zamft conversed in the offices of DiLorenzo's attorney, Markowitz; this conversation was recorded by a recording device worn by Von Zamft, and part of the tape transcript incriminating appellant was introduced into evidence (hereinafter the Von Zamft conversation). The indictment was returned on July 30, 1969.

■ Appellant's contention concerning his admissions in the 1967 interview by Agent Knox is that appellant should have been informed he was the target of an investigation and that since he was not, he failed to realize that it might have been appropriate for him to exercise his rights of silence and to counsel. This argument is based primarily on Agent Knox's personal suspicions and thoughts at that time regarding appellant's involvement in the interstate transportation of the securities. How-

ever, Agent Knox testified that he did not go to appellant's home with the thought that he might be charging appellant with involvement in the theft of the securities, but rather to attempt to locate Izzi; the warning given by Agent Knox when he was leaving was the agent's standard warning to persons such as appellant of possible consequences if he harboured the fugitive Izzi. Knox's own suspicions of DiLorenzo's possible involvement were not sufficient to cast DiLorenzo as a target of an investigation nor the interview as an accusatory interview or as custodial interrogation. Under the circumstances of this meeting, two years prior to indictment and for the purpose of attempting to locate Izzi, the government agent was not required to warn appellant of his constitutional rights. See Hoffa v. United States, 385 U.S. 293, 309–310, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

■ Appellant's arguments concerning the Von Zamft conversation present more serious questions; appellant claims that the admissions from that conversation which came into evidence violated his fourth, fifth and sixth amendment rights. Appellant contends that the conversation represented an unwarranted intrusion by the government into the attorney-client relationship between attorney Markowitz and himself and that this violated his sixth amendment right to counsel, since prior to the meeting, Von Zamft had met with federal authorities and agreed to cooperate with them. We disagree. At the time of the meeting, DiLorenzo had not been indicted or charged nor had he formally retained Markowitz or any other attorney to conduct his defense. Although the meeting was held in Markowitz's office, it was at appellant's insistence, since it was the only place he considered "safe," and only appellant and Von Zamft were present during the pertinent portion of the taped conversation. In this situation, it cannot be said that the government subverted or interfered with appellant's right to counsel. Cf. Hoffa v. United

States, 385 U.S. 293, 304–309, 87 S.Ct. 408 (1966).

■ DiLorenzo further asserts that his rights under the fourth amendment were violated by the introduction of part of the tape recording transcript of the Von Zamft conversation.[1] But, as in Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), this was not a case of "eavesdropping" in the proper sense of that term since the government did not use an electronic device to listen to a conversation it could not otherwise have heard; here, as there, the recording device was worn by a government agent (Von Zamft) with his knowledge. The decision in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L. Ed.2d 576 (1967) did not erode that of Lopez v. United States, *supra*, since *Katz* involved electronic surveillance performed without the knowledge of any of the participants in the intercepted conversation. United States v. Kaufer, 406 F.2d 550 (2d Cir.1969), aff'd, 394 U.S. 458, 89 S.Ct. 1223, 22 L.Ed.2d 414 (1969), see United States v. Bennett, 409 F.2d 888 (2d Cir.1969); contra: United States v. White, 405 F.2d 838 (7 Cir.1969), cert. granted, 394 U.S. 957, 89 S.Ct. 1305, 22 L.Ed.2d 559 (1969), restored to calendar for reargument 396 U.S. 1035, 90 S.Ct. 677, 24 L.Ed.2d 679 (1970). Thus, planting the concealed recording device on Von Zamft did not constitute an unconstitutional intrusion upon DiLorenzo's fourth amendment rights.[2] United States v. Kaufer, *supra*.

■ Appellant additionally claims that the introduction of the evidence from the Von Zamft conversation violated his fifth amendment rights since he was not informed that he was a target of the investigation and as a result he failed to realize that it might have been appropriate for him to exercise his right to silence and to counsel. This is the same claim as that made in regard to Agent Knox's interview of appellant in 1967; however, this meeting occurred little more than a month prior to indictment. Although Von Zamft was an informer and was sent to talk with DiLorenzo for the purpose of drawing forth incriminating statements, this meeting did not violate appellant's fifth amendment rights. Even if this were considered interrogation of appellant by Von Zamft, it was not custodial interrogation as in Escobedo v. Illinois, 378 U. S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Nor is there any indication of coercion in this case whatsoever, which was the basis for establishing the *Miranda* rules for in-custody interrogation. DiLorenzo was free to choose his own confidants, and he chose unwisely. This pre-indictment conversation in an attorney's office with a fellow schemer does not come close to the circumstances in *Escobedo* or *Miranda* and does not require like treatment. Nothing in Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), *Escobedo* or *Miranda* remotely suggests that the government could not use evidence of statements obtained after the date a defendant asserts the government had sufficient grounds for taking him into custody and charging him. Hoffa v. United States, *supra*. Law enforcement officers are under no constitutional duty to

---

1. Appellant further claims that this recording was illegal under the Omnibus Crime Control and Safe Streets Act of 1968, in effect at the time of the conversation. However, assuming this was an interception of a conversation, see 18 U.S.C. §§ 2510(2), (4), (5) and (6), Von Zamft was a party to the communication and was privileged to record it. 18 U.S.C. § 2511(2) (d).

2. Appellant attempts to distinguish this case upon the nature of the conversation;

i. e., here it was an admission to a past crime whereas in Lopez v. United States, *supra*, and United States v. Kaufer, *supra*, the conversation was during the course of or part of the crime itself. Such a factual distinction is meaningless, for in cases such as this, the inquiry is directed at the method by which the evidence is obtained and not the nature of the evidence. *Cf.* Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

call a halt to criminal investigations the moment they have the minimum evidence to establish probable cause. See id. Since this was not in-custody interrogation, and there was no coercion shown, the government was not required to inform appellant of his status as a target of the investigation and the failure of Von Zamft to do so did not violate appellant's constitutional rights.

■ As an additional ground for reversal, appellant claims error in the trial judge's advisory ruling that if appellant were to testify, the government could use two of DiLorenzo's three prior felony convictions for impeachment purposes. The two convictions were for larceny and forgery which are crimes which reflect on honesty and integrity and thereby on credibility.[3] See Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 936, 940 (1967). The decision to prevent use of prior convictions for impeachment purposes is clearly within the trial judge's discretion. See United States v. Palumbo, 401 F.2d 270 (2d Cir.1968), United States v. Zubkoff, 416 F.2d 141 (2d Cir.1969), cert. denied, 396 U.S. 1038, 90 S.Ct. 684, 24 L.Ed.2d 682 (1970). Both of these convictions were for crimes affecting credibility, and when convicted appellant was not a minor; although the convictions were in 1949 and 1951, the trial court's ruling was well within his discretion.

■ Another contention by appellant is that the use of testimony by one Yanks as to a prior consistent statement by Von Zamft was erroneous. After Von Zamft testified that appellant was his source of the stolen securities, the defense sought to impeach his credibility by showing that by his helpful testimony he was seeking leniency from the government in the pending sentencing on his conviction. In such a case, prior consistent statements may be used to rehabilitate a witness where under the circumstances it will be reasonably possible for the jury to say that the prior consistent statement did in fact antedate the motive disclosed on cross-examination. United States v. Grunewald, 233 F.2d 556, 566 (2d Cir.), rev'd on other grounds, 353 U.S. 391, 77 S.Ct. 963, L.Ed.2d 931 (1957). Yanks' testimony was to the effect that in February or March, 1967 Von Zamft came out of a meeting with appellant and Izzi and stated that he had rented the stock from Tony D. (appellant) and did not know that the stock was stolen. This testimony was objected to, apparently as hearsay; however, the first part of the statement is a prior consistent statement as to Von Zamft's source which was made at a time when the motive attributed to Von Zamft in cross-examination did not exist. The testimony was properly allowed into evidence, and the trial judge gave instructions limiting its purpose to the fact that the statement was made and not for the truth of the statement.[4]

■ The propriety of Judge Mansfield's presiding at appellant's trial is also challenged.[5] The experienced trial judge had already presided over the

3. Judge Mansfield ruled that appellant's third conviction, for assault in 1958, was not one that could properly be used for impeachment purposes; no question is raised concerning this ruling.

4. Appellant now raises a further argument that the second half of Yanks' testimony, i. e., of Von Zamft's prior statement, is not consistent with Von Zamft's trial testimony, since at the trial Von Zamft portrayed his own complicity in the scheme rather than his surprise at the fact of the securities being stolen. However, this objection was not raised at the trial when it could be corrected, and in any event, a prior inconsistent statement by Von Zamft was to appellant's advantage in his attempt to impeach. Under these circumstances, this was a minor error, if error at all, hardly requiring reversal.

5. A motion prior to trial under 28 U.S.C. § 144 for disqualification due to personal bias or prejudice was denied by Judge Mansfield since the supporting affidavit was insufficient and the motion was not timely filed. A petition for a writ of mandamus was denied by this court. No claim is made on appeal in regard to the denial of this motion.

trials of Izzi and Von Zamft, and appellant seeks a rule that a judge cannot preside over the trials of co-conspirators tried separately. In United States v. Simon, 393 F.2d 90, 91 (2d Cir.1968) we said that it would be a wise practice, wherever possible, in a multi-judge district such as the one involved here, that a lengthy criminal trial be retried before a different judge when remanded unless all the parties request that the same judge retry the case; however, we have refused to extend that rule to the trial of different charges against the same defendants and have left such problems to the sound judgment of the district court. Wolfson v. Palmieri, 396 F.2d 121 (2d Cir.1968). United States v. Simon, *supra,* does not require different judges to try the seriatim trials of co-conspirators. Absent special circumstances, judicial economy and calendaring demands often make it desirable that the same judge preside at seriatim trials of co-conspirators. There was no abuse of discretion in Judge Mansfield's refusal to disqualify himself on that account.[6]

 The final error claimed by appellant is that he was resentenced illegally; the original sentences pronounced were for concurrent terms of ten years on the conspiracy count (18 U.S.C. § 371) and five years on the substantive count (18 U.S.C. § 2314). However, the maximum permissible sentence on the conspiracy count is five years. The record indicates Judge Mansfield clearly intended originally to sentence appellant to the maximum terms on each of the two counts and inadvertently transposed the sentences he had intended to impose, but appellant asserts that his sentence was final and could not be corrected a few hours later by the trial judge. We do not

agree; since DiLorenzo was enlarged on bail at the trial and had not yet commenced to serve his sentence, Judge Mansfield had the power promptly to recall him and impose the corrected sentence of ten years on the substantive count and five years on the conspiracy count. DeMaggio v. Coxe, 70 F.2d 840 (2d Cir. 1934); see 18 U.S.C. § 3568; see Bozza v. United States, 330 U.S. 160, 166–167, 67 S.Ct. 645, 91 L.Ed. 818 (1947). "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner."

Affirmed.

---

6. Appellant further argues that Judge Mansfield should have disqualified himself since there were certain allegedly "scandalous" remarks by appellant about him in the recorded conversation with Von Zamft. However, the record indicates that the trial judge had not read or heard the remarks, and such remarks were not in the excerpts from the recording that were offered in evidence. There was no need for Judge Mansfield to disqualify himself, nor do we mean to imply that even if he had heard the remarks, he would necessarily be under any such duty.