**UNITED STATES of America,**
**Appellee.**

v.

**Albert PUCO, Appellant.**

**No. 251, Docket 71-1887.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 3, 1971.

Decided Dec. 3, 1971.

Jay Goldberg, New York City, for appellant.

John H. Gross, Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty., and John W. Nields, Jr., Asst. U. S. Atty., New York City, on the brief), for appellee.

Before WATERMAN, SMITH, and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

The decisive issue on this appeal is whether the District Court, in exercising its discretion under our *Palumbo* decision,[1] erred in ruling that the government could use a 21-year old narcotics conviction of appellant to impeach him while on trial in the instant case for violation of the federal narcotics laws. For the reasons stated below, we hold that the District Court did err in that ruling. We therefore reverse and remand for a new trial.

I.

Appellant Albert Puco and co-defendant Robert Gonzalez were first convicted on February 18, 1970 in the Southern District of New York, after a three day trial before Judge Pollack and a jury, of selling cocaine without an order form and of conspiring to sell illegally imported narcotics. On January 8, 1971, this Court reversed Puco's conviction and remanded for a new trial, holding that improper use by the prosecutor, while cross examining Gonzalez, of a post-arrest, out-of-court statement by Gonzalez, which implicated Puco, had deprived Puco of a fair trial.[2]

A superseding indictment was returned May 20, 1971, charging both defendants with selling cocaine without an order form and with conspiring to do so, in violation of the federal narcotics laws, 26 U.S.C. § 4705(a) (1964).[3] Puco and Gonzalez were convicted on both counts after a six day jury trial in the Southern District of New York, Dudley B. Bonsal, District Judge. Puco was sentenced to concurrent fourteen-year terms of imprisonment and has been released on bail pending determination of this appeal. Gonzalez was sentenced to concurrent seven-year terms of imprisonment and is now serving his sentence. Gonzalez has not appealed, and our ruling today affects only Puco.

The events which culminated in Puco's arrest are set forth in our earlier opinion, 436 F.2d at 761–62, and need be summarized only briefly here.[4] On June 25, 1969, undercover narcotics agents met with Gonzalez to arrange for the purchase of a large quantity of heroin.

---

1. United States v. Palumbo, 401 F.2d 270 (2 Cir. 1968), cert. denied, 394 U.S. 947 (1969).

2. United States v. Puco, 436 F.2d 761 (2 Cir. 1971).
   On April 16, 1971, Gonzalez' conviction before Judge Pollack likewise was reversed by this Court from the bench and his case was remanded for a new trial. (Unreported decision).

3. This section was repealed, effective May 1, 1971, by § 1101(b)(3)(A) of the Drug Control Act of 1970, Pub.L. 91–513, 84 Stat. 1292, and was superseded by § 308(a) of that Act. The Act also provided that prosecutions for any violation of law occurring prior to the effective date of repeal would not be affected by reason thereof. Pub.L. 91–513, 84 Stat. 1292, § 1103.

4. Our examination of the transcript of the second trial shows that the facts, to the extent here relevant, are substantially the same as stated in our earlier opinion.

After several meetings, the deal fell through when Gonzalez reported that his supplier, a person by the name of "Al," was "feeling heat."

Agent Ellin then approached Gonzalez about purchasing cocaine. Gonzalez assured him that "Al" could supply excellent cocaine. On July 2, 1969, Gonzalez arranged to have Ellin drive him to an address on White Plains Road to consummate the cocaine purchase. The two men parked the car and waited until a man identified later as appellant Puco emerged from a TV repair shop. Gonzalez then said, "There is my man now. He has the stuff in a brown bag." Puco walked into an adjoining apartment building. Gonzalez left the car and entered the same building; he returned after 30 seconds with a bag containing one-half kilogram of cocaine. Agents then moved in and arrested Gonzalez and Puco.

■ Before his second trial, Puco requested an advance ruling prohibiting the government from impeaching him with his 1950 conviction for violating the federal narcotics laws.[5] This request was denied at a pre-trial hearing. Despite this adverse ruling, Puco testified in his own behalf.[6] Defense counsel questioned Puco about his prior conviction on direct examination. During cross examination, the government also questioned him about the conviction. The government then referred to the conviction during summation.

## II.

■■ In United States v. Palumbo, *supra* note 1, at 273, we held that a trial judge does have power, in the exercise of sound discretion, to make an advance ruling prohibiting the use of a prior conviction for impeachment of a defendant "if he finds that a prior conviction negates credibility only slightly but creates a substantial chance of unfair prejudice, taking into account such factors as the nature of the conviction, its bearing on veracity, its age, and its propensity to influence the minds of the jurors improperly."[7] Upon considering the

5. Puco was convicted in 1950, when he was 26 years old, of violating 21 U.S.C. §§ 173 and 174 (1946). He was sentenced to a one-year term of imprisonment. As far as the record before us shows, up to the time of the instant offense, Puco has not run afoul of the law since 1950.

6. Appellant's taking the stand does not preclude him from raising on appeal his claim that the trial judge abused his discretion in ruling that the government could use a prior conviction for impeachment purposes. Jones v. United States, 402 F.2d 639, 642 n. 5 (D.C.Cir. 1968); Barber v. United States, 392 F.2d 517 (D.C.Cir. 1968).

The government argues that Puco's referring to his prior conviction on direct examination and using it to support his claim that the government framed him precludes him from contending on appeal that the trial judge abused his discretion. The record shows, however, that the trial judge ruled in advance of trial that, if Puco took the stand, the government could impeach him with his prior conviction. In view of this advance ruling, Puco was entitled to attempt to offset the prejudicial effect of admission of his prior conviction by refer-

ring to it before the government did and by using it to support his defense.

There likewise is no merit to the claim that Puco intended to use his prior conviction to support his story even if the trial judge ruled it inadmissible for impeachment purposes. At the first trial, for reasons not apparent on the face of the record before us, Puco's conviction was not used to impeach him when he took the stand. Nevertheless, Puco did not introduce evidence of his conviction to buttress his claim that the government had framed him. That Puco did not use the conviction at the first trial indicates that, but for the adverse ruling of the trial judge in the instant case, Puco would not have referred to his conviction at the second trial.

7. The substance of *Palumbo's* balancing test is in accord with the views of other federal courts. See Luck v. United States, 348 F.2d 763 (D.C.Cir. 1965); United States v. Hildreth, 387 F.2d 328 (4 Cir. 1967); United States v. Allison, 414 F.2d 407 (9 Cir.), cert. denied, 396 U.S. 968 (1969). *Contra*, Shorter v. United States, 412 F.2d 428 (9 Cir. 1969). On the problem of using prior

facts established by the record in the instant case in the light of the principles enunciated in *Palumbo*, we hold that the trial judge abused his discretion in ruling that Puco's prior conviction could be used for impeachment purposes.

■■ The propensity of Puco's narcotics conviction to "influence the minds of the jurors improperly", *Palumbo, supra*, 401 F.2d at 273, needs little elaboration. Reference to a defendant's criminal record is always highly prejudicial. The average jury is unable, despite curative instructions, to limit the influence of a defendant's criminal record to the issue of credibility. *Cf.* Bruton v. United States, 391 U.S. 123, 129 (1968). The potential for prejudice, moreover, is greatly enhanced where, as here, the prior offense is similar to the one for which the defendant is on trial.[8] United States v. Bailey, 426 F.2d 1236, 1240 (D.C. Cir. 1970); United States v. Hildreth, 387 F.2d 328, 329 (4 Cir. 1967); Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir. 1967), cert. denied, 390 U.S. 1029 (1968); Brown v. United States, 370 F.2d 242, 243 (D.C. Cir. 1966). As then Judge, now Chief Justice, Burger wrote in Gordon v. United States, *supra:*

> "[S]trong reasons arise for excluding those [convictions] which are for the same crime because of the inevitable pressure on lay jurors to believe that 'if he did it before he probably did so

this time.' As a general guide, those convictions . . . should be admitted sparingly. . . ." 383 F.2d at 940.

In view of the substantial likelihood of prejudice,[9] any decision to permit impeachment by reference to convictions for crimes similar to the one for which a defendant is on trial requires particularly careful consideration by the trial judge of the probative value of the prior convictions. See Gordon v. United States, *supra*, 383 F.2d at 940; Brown v. United States, *supra*, 370 F.2d at 243.

■ Analysis of Puco's prior conviction satisfies us that it "negates credibility only slightly." *Palumbo, supra*, 401 F.2d at 273. First, we do not believe that a narcotics conviction is particularly relevant to in-court veracity. True, any prior conviction relates to a defendant's credibility in the sense that jurors will give less weight to the testimony of a person with a criminal record. In *Palumbo*, however, we held that the relevant determination for a trial judge is the bearing a particular conviction has on veracity. As one respected commentator has written:

> "The theory of such impeachment [by prior conviction] is that it goes to the credibility of the witness, since one who has committed a crime is more likely to lie than a person with a spotless record. Patently the force of the theory must depend on the nature of

---

convictions for impeachment purposes in general, *see* McCormick, Evidence § 43 (1954); Note, 78 Harv.L.Rev. 426, 435–42 (1964); Note, Other Crimes Evidence at Trial: Of Balancing and Other Matters, 70 Yale L.J. 763, 774–78 (1961). *See also* Uniform Rules of Evidence, Rule 21 (1965).

8. The trial judge's remarks during pretrial colloquy would appear to indicate his failure to perceive that the chance of prejudice would be great if a defendant on trial for one offense were to be impeached with a prior conviction for a similar offense:

> "Mr. Goldberg [Defense Counsel]: Yes. Which I think raises the more similar the offense, the one being charged for which he stands trial, the

more likely it is that the jury will consider this as reflecting on the defendant's propensity to commit the crime.

\* \* \* \* \*

> The Court: It's up to me to exercise my discretion. I think a prior conviction on a narcotics count can be used by the government even if it is as old as this, in a trial involving the same kind of crime. . . . "

9. The chance of prejudice resulting from admission of prior convictions for crimes similar to the one for which a defendant is on trial may be greatest in the case of narcotics convictions because of the widely accepted belief that persons previously convicted of narcotics offenses are likely to be habitual offenders.

the prior crime." Wright, Federal Practice and Procedure § 416, at 187 (1969).

We also have indicated that crimes which involve fraud or stealing "reflect on honesty and integrity and thereby on credibility." United States v. DiLorenzo, 429 F.2d 216, 220 (2 Cir. 1970), cert. denied, 402 U.S. 950 (1971). *Accord,* United States v. Palumbo, *supra,* 401 F.2d at 273. Violent or assaultive crimes, on the other hand, generally are not thought to reflect directly on veracity. Jones v. United States, 402 F.2d 639, 643 (D.C. Cir. 1968); Gordon v. United States, *supra* 383 F.2d at 940; Brown v. United States, *supra,* 370 F.2d at 243. See United States v. Palumbo, *supra,* 401 F.2d at 274 (rape). While there is considerable uncertainty as to what crimes, by reason of their nature, may be considered to be highly probative of lack of veracity, we believe that a narcotics conviction has little necessary bearing on the veracity of the accused as a witness.[10] But see United States v. McIntosh, 426 F.2d 1231, 1233 (D.C. Cir. 1970).[11]

The probative force of Puco's 21-year old narcotics conviction also is greatly diminished by its age. United States v. Zubkoff, 416 F.2d 141, 143 (2 Cir. 1969), cert. denied, 396 U.S. 1038 (1970); United States v. Allison, 414 F.2d 407, 412 (9 Cir.), cert. denied, 396 U.S. 968 (1969); United States v. Palumbo, *supra,* 401 F.2d at 273; Gordon v. United States, *supra,* 383 F.2d at 940. That some convictions may be too venerable to bear reasonably on the present credibility of a defendant has often been recognized. See McCormick, Evidence § 43, at 91 (1954). Moreover, concern over the use of remote convictions is reflected in the Proposed Rules of Evidence for the United States Courts and Magistrates, Rule 609(b) (1971), which recommends that evidence of a conviction for impeachment purposes not be admissible "if a period of more than 10 years has elapsed since the date of his most recent conviction or of the release of the witness from confinement, whichever is the later date." This recommendation by a distinguished Advisory Committee reflects the view that old convictions are not a meaningful index of propensity to lie. While we think it better not to establish rigid age limitations on the use of prior convictions for impeachment purposes, we do hold that Puco's 21-year old conviction had little bearing on testimonial trustworthiness.[12]

We believe that this case is a classic illustration of a situation where "a prior conviction negates credibility only slightly but creates a substantial chance of unfair prejudice . . . ." *Palumbo, supra,* 401 F.2d at 273. Accord-

10. We do not hold that a prior narcotics conviction can never be used to impeach a defendant.

11. In *McIntosh,* the court upheld the use of a defendant's narcotics conviction for impeachment purposes where the defendant was charged with mail theft. See also Brooke v. United States, 385 F.2d 279 (D.C.Cir.1967). The court in *McIntosh* also stated that "narcotics convictions do bear weight on the issue of credibility." 426 F.2d at 1233. Since we do not hold that narcotics convictions can never be used to impeach a defendant, *McIntosh* is not necessarily inconsistent with our decision. Moreover, Chief Judge Bazelon stated in his dissent:

"The bearing of appellant's 1961 narcotics conviction on his in-court veracity is certainly less than self-evident.

Contrarily, the prejudicial propensity of the conviction needs little elaboration; . . . For these reasons, this Court has never approved the general use of narcotics convictions for impeachment purposes under *Luck* and its progeny." 426 F.2d at 1236.

12. The government argues that United States v. DiLorenzo, *supra,* and United States v. Palumbo, *supra,* upheld for impeachment purposes the use of convictions which were older than Puco's narcotics conviction. However, the convictions in those cases involved fraud and stealing—crimes which bear directly on credibility. Moreover, the convictions which were used to impeach the defendants in those cases did not involve crimes similar to the ones for which the defendants were on trial.

ingly, we hold that the trial judge abused his discretion in not excluding Puco's conviction for impeachment purposes.

 The government maintains, however, that Puco never invoked the trial judge's discretion, because he failed to "offer proof sufficient for the judge to compare the relevance of the prior conviction to credibility with the importance to the defense of having the defendant testify free from prejudice which might be created by reference to it." United States v. Costa, 425 F.2d 950, 954 (2 Cir. 1969), cert. denied, 398 U.S. 938 (1970). Our examination of the record reveals that this claim is without merit. The trial judge's remarks during colloquy indicate his awareness both of his authority to exclude evidence of prior convictions and of the fact that the government sought to impeach Puco with a 1950 narcotics conviction. Moreover, it also is clear that the trial judge was familiar with this Court's earlier opinion in this case, *supra* note 2, and that he therefore knew of the importance of Puco's testimony to the defense. Under these circumstances, it cannot be said that Puco failed to invoke the court's discretion. See Jones v. United States, *supra*, 402 F.2d at 643.

### III.

Puco also claims error in the trial judge's failure to protect him from the prejudicial spill-over effect of a post-arrest statement made by Gonzalez implicating Puco.[13] Since Gonzalez has not appealed from his conviction before Judge Bonsal, the problem of his alleged post-arrest statement will not arise at Puco's new trial and we therefore do not reach this issue.

We find no grounds for reversal in Puco's other claims of error.[14]

Reversed and remanded for a new trial.

13. The post-arrest statement was never introduced into evidence. However, the Assistant United States Attorney asked Gonzalez a series of questions about this statement during cross examination. Gonzalez admitted having a conversation with an Assistant United States Attorney after his arrest but denied making each of the alleged assertions implicating Puco. While the use of this statement would not violate the *Bruton* doctrine, Nelson v. O'Neil, 402 U.S. 622 (1971), Puco argues that the trial judge was obligated to protect him from the prejudicial spill-over effect of the statement by either granting his motion for severance or, at the very least, giving limiting instructions. We do not reach this claim.

14. Puco also claims error in the admission of the testimony of Agent Scrocca that he recognized Puco's voice on the night of the arrest as that of the supplier, "Al", to whom Scrocca had spoken over the telephone on two different occasions during the abortive negotiations for the purchase of heroin. Relying on Stovall v. Denno, 388 U.S. 293, 302 (1966), Puco argues that the voice identification was made under circumstances so unnecessarily suggestive as to deprive him of a fair trial. This claim is without merit.

During oral argument, Puco withdrew his further claim that his conviction on the superseding indictment had violated the double jeopardy clause of the Fifth Amendment.