Alexander Vitale, J.
The indictment against this defendant alleges that with the intent to prevent Patrolman John Sturz, a member of the Nassau County Police Department, from performing his lawful duty, namely, the arrest of the defendant, he did kick said peace officer in the groin causing him injuries.
After the trial had commenced, but before the People and defendant had delivered opening statements to the jury, the defendant, through his attorney, made an application to limit cross-examination of the defendant, were he to take the stand, to the following extent.
The court was informed that the defendant is 21 years of age. He has an arrest and conviction record, namely:
*442 In 1970 he was arrested and charged with a burglary that had been disposed of by his adjudication as a youthful offender. In the following year he was charged with two misdemeanor crimes, that is, possession of a dangerous drug in the 6th degree, and the crime of resisting arrest. Both of these charges were disposed of by one plea to the crime of attempted possession of a dangerous drug in the 6th degree. In January of 1972 the defendant pled guilty to attempted petit larceny in disposition of an arrest for petit larceny. Finally, on November 29, 1972 he was convicted upon his plea of guilty to attempted assault in the 3rd degree.
Defense counsel went on to say it was his intention to place his client on the stand to testify in his own defense but he was concerned over'the effect the prior charges might have upon the jury in determining the issues which were involved in the present trial, that is, the claimed assault upon a policeman.
By reason of this, the defendant applied for an order that the District Attorney be directed not to cross-examine this defendant as to any of these convictions or the alleged immoral acts' that lay behind the arrests above referred to. The People opposed upon the grounds that the statute and case law allowed them to cross-examine the defendant without limitation as to any immoral acts which he may have committed in the past and - to bring to the attention of the jury any convictions which the defendant may have sustained.
The defendant has represented he will take the stand. There is no reason to question his good faith. The People, as an aid to the court in determining the application, said that the only eyewitness to the alleged assault was the complaining witness, Patrolman Sturz. However, it was expected that a Mr. Dick, a private security officer at the Nassau County Coliseum would also circumstantially testify as to the assault. He was expected to say that he was standing outside of the room where it allegedly happened and heard some sounds of scuffling therein. Mr. Dick would also testify about a disorderly conduct offense that allegedly was committed by the defendant at the Nassau County Coliseum. The defendant was on those premises at a time when a concert by a group of musicians known as the “ Grateful Dead ” was about to take place. Mr. Dick took him into custody and charged him with rolling a smoke bomb along the floor in the direction of incoming patrons.. He was turned over to Patrolman Sturz and other policemen and transported by them to a station house. It is there that the alleged felonious assault upon a policeman occurred.
*443 The foregoing outline of the testimony that was expected to be introduced at the trial points up what is likely to be the case, that is, the jury will have before them Patrolman Sturz’ testimony, standing by itself as to the assault, or, in the likely event that the defendant does take the stand, it will be his word against Mr. Sturz’ as to what went on in that room in the station house where it is claimed the policeman was prevented from performing his lawful duty of arresting the defendant.
The ruling I do make upon the defendant’s application begins by noting that the standard rule in New York is expressed in People v. Sorge (301 N. Y. 198) and similar cases. There it is confirmed that a witness may be interrogated upon cross-examination "with respect to any immoral, criminal -or vicious acts in his life which may affect his character, and show him to be unworthy of belief. However, a trend has developed in recent years in the law to examine this general principle in the light of the particular circumstances of each individual case. The Federal courts have initiated this new approach. See for example Luck v. United States (348 F. 2d 763, 768 [1965]). 1£ The trial court is not required to allow impeachment by prior conviction every time a defendant takes the stand in his own defense. The statute, in our view, leaves room for the operation of a sound judicial discretion to play upon the circumstances as they unfold in a particular case. There may well be cases where the trial judge might think that the cause of truth would be helped more by letting the jury hear the defendant’s story than by the defendant’s foregoing that opportunity because of the fear of prejudice founded upon a prior conviction.”
In United States v. Palumbo (401 F. 2d 270, 273 [1968]) the defendant contended that the District Court must exercise its discretion in determining whether to allow use of prior convictions to impeach the defendant, while the government argued that the Trial Judge had no discretion in this respect.
In affirming the conviction the Circuit Court said (p. 273): £ ‘ In any event we do not accept the broad proposition that a trial judge has no discretion to bar use of prior convictions to impeach a defendant. In short, we hold that a trial judge may prevent such use, if he finds that a prior conviction negates credibility only slightly but creates a substantial chance of unfair prejudice, taking into account such factors as the nature of the conviction, its bearing on veracity, its age, and its propensity to influence the minds of the jurors improperly. ’ ’
The court went on to enunciate its express approval -of a broad doctrine spelled out in Gordon v. United States (383 F. 2d 936, *444 940 [1967]). “In common human experience acts of deceit, fraud, cheating or stealing, for example, are universally regarded as conduct which reflects adversely on a man’s honesty and integrity. Acts of violence on the other hand, which may result from a short temper, combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity. A ‘ rule of thumb ’ thus should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not ”.
This growing body of Federal law in this area is now beginning to be reflected in local State cases. For example, in People v. Wilson (75 Misc 2d 471) it was held the questions that may be put by the People concerning prior convictions involve not an absolute right on the- part of the prosecution, but, rather, a sound exercise of the court’s discretion. The court in that case alluded to the due process right that the defendant has to a fair trial, and the impact that may be had upon said right by reason of the admission before the jury of prior convictions.
Similarly (People v. King, 72 Misc 2d 540) where a Trial Judge refused to allow the People to ask of the defendant questions bearing on a conviction that had occurred eight years prior, with, of course, a blameless life intervening.
Turning -again to the Federal courts, People v. Puco (453 F. 2d 539, 543 [1971]) took up the question of fair trial from a standpoint of the value of allowing testimony about a 21-year-old narcotic conviction, before a jury that was considering a narcotic charge against the particular defendant. The court declared (p. 543): “We believe that this case is a classic illustration of a situation where ‘ a prior conviction negates credibility only slightly but creates a substantial chance of unfair prejudice ’.”
The nature of the People’s proof makes it crucial that the court approach squarely the issue of whether the trial jury should, if the defendant testifies, be permitted to hear testimony about the alleged immoral acts that may underlie two of the defendant’s arrests, that is, the 1971 charge of resisting arrest, and the 1972 arrest for assault.
The fact that both of these incidents are so recent in point of time, does not, I think, cut down the defendant’s right to keep them from the jury.
This defendant is 21 years of age. His apparent failure to exhibit rehabilitation is therefore not as significant as it would be with regard to an older defendant. On the other hand, it *445 may well be said that the very recent date of these prior, apparently immoral acts, increases the likelihood of the jury concluding that if he did it once, it is likely he did it again. The strong possibility exists that if the jury hears testimony about the defendant’s prior acts termed resisting arrest and assault, they are likely to conclude this defendant has a propensity for committing the crime of resisting arrest charged in the present indictment. '
It would appear clear that the People would not in the first instance be permitted as part of their direct case to bring out the fact that this defendant was charged in 1971 and 1972 with the crimes of resisting arrest and assault. (See People v. Schwartzman, 24 N Y 2d 241.)
The one to one aspect of the direct testimony in the case, namely, the- complaining patrolman against the defendant, is a further reason why the defendant’s desire to take the stand may well be chilled by the knowledge that the People will place before the jury information about these former incidents involved in the charges of resisting arrest, and an assault.
I therefore believe that- under the particular facts present in this case, the defendant’s right to due process must be given greater weight than the People’s right to attempt to impair Ms credibility by referring to all of his prior convictions or allegedly immoral acts.
Therefore, the defendant’s application is disposed of as follows.
The People may, if the defendant takes the stand, question him as to the underlying acts that resulted in Ms 1970 adjudication as a youthful offender. They may do so as long as they do not use the word “ crime ” in describing that act, and as long as they proceed, of course, in good faith. (People v. Geller, 27 A D 2d 843; cf. People v. Williams, 41 A D 2d 609.)
The People may further question the defendant as to the convictions he sustained for the crimes of attempted criminal possession of a dangerous drug and attempted petit larceny.
They will not be permitted, however, to question him as to the facts involved in his arrest in 1971 upon the charge of resisting arrest, nor upon the 1972 charge of assault that was laid against him.
It may be noted that as to these last two charges, the defendant did not in any instance admit his guilt.
Ordinarily, a hearing on notice to the People would be ordered before a decision of this nature was arrived at. In this ease, however, the information furnished to the court by defense *446 counsel and the People, all of which is reflected in this decision, was sufficient to enable the court to arrive at a fair determination of the defendant’s request without the necessity of a formal hearing.