In the

# United States Court of Appeals
## For the Seventh Circuit

No. 25-1011

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FARHAN SHEIKH,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19 CR 655 — **Mary M. Rowland**, *Judge.*

ARGUED NOVEMBER 5, 2025 — DECIDED JANUARY 13, 2026

Before RIPPLE, KIRSCH, and LEE, *Circuit Judges.*

KIRSCH, *Circuit Judge.* A jury convicted Farhan Sheikh of
threatening to kill doctors, patients, and visitors at a Chicago
abortion clinic in violation of 18 U.S.C. § 875(c). On appeal,
Sheikh challenges his conviction by arguing that § 875(c) is
unconstitutional, the grand jury that indicted him wasn't ad-
equately informed about the law, and that improper evidence
was admitted at trial. Because these arguments fail to per-
suade, we affirm.

I

In August 2019, Farhan Sheikh was a college student with a part-time job and was a regular user of the social media app iFunny. iFunny users frequently shared humorous content on the platform, some of which involved dark humor that made light of serious subjects. Sheikh typically posted non-humorous content on iFunny, including soccer photographs and videos, and his account was public, meaning that anyone could view it. On August 13, he posted the following:

> I am done with my state and thier bullshit abortion laws and allowing innocrnt kids to be slaughtered for the so called "womans right" bullshit. Ive seen nothing but whores go out of the way to get an abortion, but no more. I will not tolerate this anymore. Im DONE. On August 23rd 2019, I will go to the WOMANS AID CENTER in Chicago on peterson. I will proceed to slaughter and murder any doctor, patient, or visitor i see in the area and I will not back down. consider this a warning for anyone visiting…

The Women's Aid Center is a real clinic in Chicago that provides abortions and other services. Sheikh later commented on the same post that, "This is not a joke…" and wrote separately, "To all the fbi agents in this app, I am NOT a satirical account. I post what I mean and i WILL carry out what I post." He also wrote, "August 23 2019 Womans aid center on Peterson if you know, you know…" and, "If killing babies is a right and practicing your freedom of speech isnt, then what kinda society is this? I do not care anymore, may god forgive me for what I am going to do soon…[.]" In private messages, Sheikh discussed how to access the clinic and wrote that, "I can make

it in, it's fine if I can't make it out." He told another user, "I might be going to jail" and, "I will not back down."

An iFunny user reported Sheikh's posts to the FBI. The FBI investigated and learned that Sheikh had saved a screenshot of a Google search result of the Women's Aid Center in Chicago. Law enforcement officers quickly warned the clinic about the threat, and the clinic canceled its appointments for the day. An employee who heard about Sheikh's posts left work and took the next several days off. The clinic decided to improve its security, installing additional cameras and a panic button.

Officers arrested Sheikh, and a grand jury indicted him with transmitting a threat through interstate communications in violation of 18 U.S.C. § 875(c). Sheikh then moved to dismiss the indictment, arguing that § 875(c) was facially unconstitutional and (relatedly) that the government failed to properly instruct the grand jury. The district court denied that motion and held a trial.

Among other evidence, the government introduced the testimony of two clinic employees and images of security improvements the clinic made in response to Sheikh's posts. The employees testified about the clinic's services and location, their reactions to learning about the threat, and the steps the clinic took to enhance security. Sheikh took the stand and testified that he never intended or prepared to carry out an attack but had instead posted about the clinic to gain popularity in the iFunny community. After the jury convicted him, Sheikh moved for a new trial, but the district court denied that motion, too. This appeal followed.

II

A

Sheikh argues that the district court should have granted his motion to dismiss the indictment because § 875(c) conflicts with the First Amendment. Specifically, Sheikh argues that § 875(c) is unconstitutional on its face because it fails to require (1) that only a true threat be punishable, and (2) that a punishable threat must be made with some level of subjective intent. We review the constitutionality of a federal statute de novo. *United States v. Rush*, 130 F.4th 633, 635 (7th Cir. 2025).

Section 875(c) says that:

> Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 875(c). Sheikh is right that the statute doesn't explicitly require that punishable speech be a true threat, meaning "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). The statute also lacks an express requirement that punishable speech be made with criminal intent.

The absence of these express requirements doesn't matter. That's because § 875(c) can and must be interpreted to implicitly include these requirements. See *United States v. Hansen*, 599 U.S. 762, 781 (2023) ("When legislation and the Constitution brush up against each other, [a court's] task is to seek harmony" between the two.). In *United States v. Stewart*, we held

that § 875(c) criminalizes only true threats and not constitutionally protected speech. 411 F.3d 825, 828 (7th Cir. 2005) (citing *Watts v. United States*, 394 U.S. 705, 707 (1969)); see also *United States v. Khan*, 937 F.3d 1042, 1051 (7th Cir. 2019). And Sheikh's objection about a mens rea requirement similarly fails because the "mere omission from a criminal enactment of any mention of criminal intent should not be read as dispensing with it." *Elonis v. United States*, 575 U.S. 723, 734 (2015) (citation modified). Instead, courts must generally interpret "criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *Id.* (citation modified).

We apply that approach to mens rea in § 875(c). *Id.* at 737–42. More specifically, § 875(c) punishes threats that are made at least recklessly. See *Counterman v. Colorado*, 600 U.S. 66, 73–82 (2023) (considering a state-law prohibition on true threats and holding that in such cases a mens rea standard of recklessness satisfies the First Amendment); *United States v. Garnes*, 102 F.4th 628, 637 (2d Cir. 2024) (finding that, after *Counterman*, a showing of recklessness is sufficient to violate § 875); *Voneida v. Johnson*, 88 F.4th 233, 238 & n.3 (3d Cir. 2023) (same); *United States v. Ehmer*, 87 F.4th 1073, 1120 n.16 (9th Cir. 2023) (same); *United States v. Nformangum*, No. 24-20515, 2026 WL 18900, at *4–6 (5th Cir. Jan. 2, 2026) (same); *United States v. Franks*, No. 24-11546, 2025 WL 2732412, at *1 (11th Cir. Sept. 25, 2025) (same). Insofar as our previous cases, including *Stewart*, suggested that a higher level of subjective criminal intent was required to violate § 875(c), *Counterman* supersedes that precedent: recklessness is now the standard.

To prevail on this facial challenge, Sheikh needs to show that "a substantial number of [§ 875(c)'s] applications are

unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (citation modified). We read § 875(c) to include the subjective intent and true threat requirements that Sheikh identifies as necessary, and so the law does not run afoul of the First Amendment in the ways that Sheikh argues.

Sheikh objects that the grand jury that indicted him wasn't informed about the true threat and mental state requirements under § 875(c) and wasn't allowed to consider the context for his speech. The district court carefully considered and correctly rejected these arguments. And even if the district court's analysis was flawed in some way (Sheikh fails to tell us how), the kinds of errors in a grand jury proceeding that Sheikh speculates about are harmless now, after the trial jury reached a guilty verdict. *United States v. Mechanik*, 475 U.S. 66, 70–71 (1986).

B

Moving to the trial itself, Sheikh objects to the admission of the clinic workers' testimony and the images of security improvements. We review evidentiary rulings for an abuse of discretion and will reverse only if we reach "the definite and firm conviction that a mistake has been committed" that was not harmless. *United States v. Smith*, 150 F.4th 832, 847 (7th Cir. 2025) (citation modified).

As noted above, the government needed to prove that Sheikh's posts conveyed "a real possibility that violence [would] follow." *Counterman*, 600 U.S. at 74. In this inquiry, "both the victim's response to a statement and the victim's belief that it was a threat" are relevant. *United States v. Parr*, 545 F.3d 491, 501 (7th Cir. 2008) (citation modified); see *United*

*States v. Schneider*, 910 F.2d 1569, 1570–71 (7th Cir. 1990). Here, what Sheikh's posts meant to those who were threatened and the actions they took in response tend to show that Sheikh made a true threat. See *Counterman*, 600 U.S. at 74.

Sheikh makes three objections: that the clinic workers learned about the threat from law enforcement; that they didn't view the iFunny posts themselves; and that law enforcement encouraged the clinic to implement security measures. The employees' lack of first-hand knowledge of the posts or their context and the possibility that law enforcement encouraged security improvements means that the probative value of this evidence was diminished. Yet there's no dispute that law enforcement accurately conveyed the gist of what Sheikh wrote, and what the workers believed and did as a result was still relevant to the seriousness of the threat. See *Parr*, 545 F.3d at 501–02 (noting that "the reaction of the target of a threat even when the speaker did not communicate the threat to the target" was relevant to the true threat determination). On cross-examination, Sheikh was free to point out the limits of these witnesses' knowledge and law enforcement's role in prompting changes at the clinic. But even imperfect evidence is generally admissible. See *United States v. McKibbins*, 656 F.3d 707, 711 (7th Cir. 2011) ("The Federal Rules of Evidence do not limit the government to the most probative evidence; all relevant evidence is admissible and the Rules define relevance broadly.") (citation modified).

Sheikh's final argument—that the clinic workers' testimony and images were unfairly prejudicial—is undeveloped and unsupported by the record. A district court may exclude relevant evidence when the probative value "is substantially outweighed by a danger of … unfair prejudice." Fed. R. Evid.

403. Because the application of Rule 403 depends heavily on context, "we give special deference to the district court's findings and reverse only when no reasonable person could take the view adopted by the trial court." *United States v. Frazier*, 129 F.4th 392, 405 (7th Cir. 2025) (citation modified).

Evidence can be unfairly prejudicial if it would make it likely that a jury would decide the case based on emotions, rather than the evidence presented. See *Barber v. City of Chicago*, 725 F.3d 702, 714 (7th Cir. 2013). In this case, however, the clinic workers' testimony was largely matter-of-fact.

Even if the district court erred in allowing the workers' testimony and the images, however, the evidence of guilt—the specificity of the initial post, testimony from an iFunny user who interpreted Sheikh's posts as threats, and Sheikh's subsequent iFunny conversations and posts expressing a serious intent—means that any error was harmless. See *Smith*, 150 F.4th at 848. The images and clinic workers' testimony were relevant to the truth of Sheikh's threat, were not unfairly prejudicial, and didn't turn the tide with the jury given the strength of the government's case.

AFFIRMED